# SIMPLEX ELECTRIC HEATING COMPANY *v.* GOLD CAR HEATING & LIGHTING COMPANY.

TRADEMARKS; OPPOSITION; REGISTRATION; SIMILARITY OF GOODS; USE OF MARK; CORPORATE NAME; WAIVER.

I. A thermostatic steam trap used in connection with a steam car-heating apparatus, and a thermostatically operated relief valve upon an electrically heated hot water boiler are within the same general class, so as to require the denial by the Commissioner of Patents, on opposition, of the registration, for the former, of a word in use as a trademark for the latter.    (Citing *Walter Baker & Co.* v. *Harrison*, 32 App. D. C. 272.)

2. A mark in use by one person as a general trademark for a general class of goods will not, upon opposition by him, be registered, on the application of another, for goods within that class, which the opposer has not manufactured, or to which he has not directly applied the mark, since one should not, in justice, be permitted, by the adoption and use of another's mark, to invade his present field, or the domain to which he may legitimately extend the use of his mark.

3. The manufacturer of thermostatically controlled electric heating apparatus may, at any time, manufacture electrically heated steam car-heaters, and extend the use of his general trademark to thermostatic steam traps upon them; and therefore a prior manufacturer of thermostatic steam traps in connection with steam car-heating apparatus will, on the other's opposition, be denied registration, as a trademark for such traps, of the word already in use by the opposer as his trademark.

4. Ignorance of a competitor's application of his trademark to a particular kind of goods is no excuse for knowingly appropriating the mark for use upon the same general class of goods; and registration will not be granted, on opposition, to the appropriator.    (Citing *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285.)

5. Objection to the use by another, as a trademark, of the distinguishing part of the opposer's corporate name, is waived by failure to set out the objection in the notice of opposition.    (Citing *Rookwood Pottery Co.* v. *A. Wilhelm Co. ante,* 1.)

No. 936.   Patent Appeal.   Submitted November 13, 1914.   Decided January 4, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents dismissing an opposition to the registration of a trademark.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, Simplex Electric Heating Company, appeals from the decision of the Commissioner of Patents dismissing its opposition to the registration by appellee, Gold Car Heating & Lighting Company, of the word "Simplex" as a trademark for thermostatic steam traps.

It is alleged in the notice of opposition that appellant, long prior to any use of the mark by appellee, used the word "Simplex" as a trademark for goods of the same descriptive properties as those set forth in the application of appellee company. Appellant further alleges that appellee company manufactures and sells both steam and electric heating apparatus, and is a competitor of appellant in the manufacture and sale of electric heating apparatus, including the thermostatic devices therefor. It is also alleged that appellant would be damaged, in that the use of the mark by appellee would be likely to deceive purchasers and cause confusion in trade.

It appears that appellee company only uses the mark on its thermostatic steam trap, which is used in connection with its steam car-heating apparatus. But it must be conceded that the granting of registration would authorize it to extend its use to any thermostatic steam trap it might devise or use in the future.

On the other hand, the word "Simplex" is appellant's general trademark for its electrical and steam apparatus. It must be remembered that appellant's business is not confined alone to the manufacture and instalment of electrical heating, but to steam appliances also. In fact, as stated in the opinion of the Examiner of Interferences: "It is pointed out for opposer that it makes certain electrically heated boilers or water heaters, and that some of these have a thermostatically operated relief valve. But there is no proof that opposer manufactures

such a valve, *per se,* or uses the trademark 'Simplex' thereon, and it is freely admitted that the relief valve is not put on the market separately by applicant."

It also appears that appellant makes a thermostatically controlled apparatus as a regular product. The witness Ayer testified on behalf of appellant: "We make frequent applications of thermostats to control a variety of our product in the development of special work for special customers; in such cases thermostats are frequently applied to our standard apparatus usually sold without thermostats." The witness also testified to the use of thermostats with hot water boilers manufactured and sold by appellant company, and to one particular type of thermostatic valve which operates automatically to prevent generation of steam if the boiler is neglected. He described it as a device which may be operated to open a steam valve to permit the flow of steam in the same manner as is adapted to permit the flow of water to prevent the generation of steam. In other words, like appellee's device, it is a temperature controlled relief valve, and is used for the same general purpose, to control the overflow or discharge of water or steam.

*Mr. Nathan Heard* and *Mr. Frederick A. Tennant* for the appellant.

*Mr. Arthur C. Frazer* and *Mr. E. Myers* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Thus it will be observed that the product of appellant is within the same general class as that of appellee. "The intent of the statute is to protect the rightful owners of trademarks in their valuable property rights; and it seems to tax the courts to the utmost to protect those rights against the ingenuity of counsel and the designs of sharp competitors. A mark should be denied not only when used upon goods of the same descriptive properties as a similar registered mark, but when used on goods belonging to the same general class." *Walter Baker &*

*Co. v. Harrison,* 32 App. D. C. 272.   It is no answer that appellant has not manufactured a steam car heating system upon which thermostatic steam traps are used, or even that its trademark has not been applied directly to the thermostatic devices in use.   They are a part of its system to which the mark is applied, and it is at any time within their power to apply it to any appliance of that kind they may manufacture; and this is true should they extend their manufacture to electrically heated steam car heaters.   Indeed, it appears that such heating apparatus may be manufactured by appellant.   It, therefore, has the right to extend the use of its mark accordingly.   Appellee should not, in justice, be permitted, by the adoption and use of this mark, to invade the present field of appellant, or the domain to which it may legitimately extend the use of its mark. In *Florence Mfg. Co.* v. *Dowd,* 101 C. C. A. 565, 178 Fed. 73, the court, considering the right of the owner of a mark to extend its use, said:   "But it is urged that as the complainant did not manufacture tooth brushes at the time the defendants entered the field, it cannot be injured by the sale of tooth brushes by others.   We do not think the conclusion follows. The complainant had acquired a reputation as the manufacturer of high-grade toilet brushes; it certainly had a right to include tooth brushes at any time, and when it did so, purchasers who were acquainted with the high character of its goods would quite likely purchase its tooth brushes, deeming its previous reputation a guaranty of excellence.   In other words, the complainant did not abandon the right to make 'Keepclean' tooth brushes because it did not at the outset make such brushes, as well as other varieties of toilet brushes."   To the same effect are *Collins Co.* v. *Oliver Ames & Sons,* 20 Blatchf. 542, 18 Fed. 569; *American Tobacco Co.* v. *Polacsek,* 170 Fed. 117.

It is no excuse that appellee's officers testified that they were not aware that appellant applied the mark to steam heaters. They conceded they knew of the existence of appellant company. In fact, they were competitors to the extent of both having furnished car-heating systems for the New Haven Railroad Company.   Appellee knew of the general use of the mark by

appellant, and it should have advised itself fully before appropriating the mark. It is hard, even in the absence of evidence to the contrary, to attribute good faith to one who knowingly appropriates the mark of another, to be used upon the same general class of goods. As Mr. Justice Robb said in *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285: "The purpose of the act being to prevent, and not to promote, fraud and mistake, we do not feel inclined, even in a doubtful case, to grant registration to a claimant where it appeared, as here, that when he adopted the mark he knew of its prior adoption and use by another firm in connection with goods of the same general character and properties. The opportunity for selection being as limitless as the human imagination, we have reason to question the motive prompting the adoption, by one dealer, of a mark previously applied by another dealer to like good."

The case here presents no great difficulty. Appellee is using the mark in question upon an appliance which belongs to a class in use by appellant. The general system of appellee, to which the appliance belongs, possesses the same descriptive properties of the system which bears the mark of appellant. That such a condition would in all probability lead to confusion in trade is evident. A situation therefore exists which is forbidden by the statute.

Inasmuch as the objection to the use of the distinguishing part of appellant's corporate name was not set out in the notice of opposition, it must be deemed to have been waived. See opinion of this court in *Rookwood Pottery Co.* v. *A. Wilhelm Co.* ante, 1, filed this date.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.                                        *Reversed.*